# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ULTRA LOGISTICS, INC.,** | Case No. 19–cv–19315–ESK |
| Plaintiff, | |
| v. | |
| **CODY KEYS TRUCKING, LLC,** *et al.*, | OPINION |
| Defendants. | |

**KIEL**, **U.S.M.J.**

    **THIS MATTER** comes before the Court on plaintiff Ultra Logistics, Inc.'s (Ultra Logistics) motion for summary judgment pursuant to Federal Rule of Civil Procedure (Rule) 56(a) (Motion). (ECF No. 21.) Defendants Cody Keys Trucking, LLC (Cody Keys) and Northland Insurance Company (Northland) filed opposition to the Motion (ECF No. 23), and Ultra Logistics filed a reply brief in further support of the Motion (ECF No. 24). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

    This case stems from bags of chips from Frito-Lay allegedly damaged in transit.[1] Cody Keys provided freight services to Ultra Logistics under a Broker-Carrier Agreement executed on September 7, 2017 (Carrier Agreement). (ECF No. 1-1 ¶ 6.) Under a separate contract with Ultra Logistics entered on November 7, 2018 (Rate Agreement), Cody Keys agreed to transport the bags of chips from Phoenix, Arizona to Frankfort, Indiana. (*Id.* ¶¶ 16, 17, 19.) An addendum to the Rate Agreement required Cody Keys' driver to take a "low

---

[1] Frito-Lay, Inc. (Frito-Lay) is not a party to this action. (ECF No. 1-1.)

altitude driving route" because "high altitudes can cause the … bags to burst." (*Id.* ¶ 18.)

Ultra Logistics alleges the bags of chips "were in good condition when Cody [Keys] took control [of] them in Phoenix[.]" (*Id.* ¶ 20.) However, according to the complaint, "the truck owned and operated by Cody [Keys] … [failed to] follow the … low altitude driving route … [and] the … bags burst as a result[.]" (*Id.* ¶ 21.) After reimbursing Frito-Lay for the damaged bags, Ultra Logistics obtained an assignment of Frito-Lay's claim against Cody Keys. (*Id.* ¶ 23.)

Ultra Logistics filed its complaint against Cody Keys and Northland in the Superior Court of New Jersey on September 19, 2019. (ECF No. 1-1.) The complaint asserts three causes of action: (i) liability under the Carmack Amendment, pursuant to 49 U.S.C. §§ 13501 and 14706, against Cody Keys (count one); (ii) breach of contract against Cody Keys (count two); and (iii) violation of the implied covenant of good faith and fair dealing against Northland (count three).[2] (*Id.* pp. 2–6.) Defendants removed this matter to this Court on October 24, 2019, pursuant to 28 U.S.C. §§ 1332 and 1441. (ECF No. 1.)

After the Motion was fully briefed, the parties consented to a magistrate judge's authority to conduct all proceedings in this matter. (ECF Nos. 25, 26.) Based on certain deficiencies in the parties' original submissions, I entered a text order on January 15, 2021 directing the parties to file declarations with authenticated, legible exhibits, and instructing Cody Keys to file declarations complying with 28 U.S.C. § 1746.[3] (ECF No. 27.) Pursuant to the text order,

---

[2] The complaint identifies Northland as Cody Keys' insurance carrier under a commercial general liability policy. (ECF No. 1-1 ¶¶ 29, 30.) Ultra Logistics claims it is a certificate holder or additional insured under Cody Keys' policy with Northland, and alleges Northland breached a duty of good faith and fair dealing owed to Ultra Logistics. (*Id.* ¶¶ 31, 34.) Essentially, Ultra Logistics seeks coverage under the Northland policy for the loss. (*Id.* ¶¶ 35, 36.) However, neither the moving brief nor the reply brief discuss count three of the complaint.

[3] In support of its opposition to the Motion, Cody Keys originally filed a certification of Brad Linder with the following jurat: "I understand that if any of the

revised declarations were filed by Ultra Logistics on January 22, 2021 (ECF No. 28), and by Cody Keys and Northland on January 29, 2021 (ECF No. 29), respectively.

The question before me is whether Ultra Logistics is entitled to judgment as a matter of law pursuant to Rule 56(a) in the purported absence of any disputed material fact as to Cody Keys' liability for the damaged bags of chips. Since at least several disputed material facts persist, summary judgment is not appropriate, and the Motion will be denied.

### I.     ULTRA LOGISTICS' POSITION

Ultra Logistics argues summary judgment should be granted as to count one—violations of the Carmack Amendment, 49 U.S.C. §14706, against Cody Keys—because there is no factual dispute that the bags of chips were damaged in transit while in Cody Keys' custody. (ECF No. 21-2 p.4 ("It is … beyond dispute that when [Cody Keys] delivered the [bags] to … Frankfort, [they] had popped[.]").) Ultra Logistics asserts that, since the Carmack Amendment imposes liability on a common carrier for loss of or damage to goods in an interstate commerce shipment, it is entitled to summary judgment as to count one. (*Id.* pp.8, 9.) Ultra Logistics notes that Cody Keys' driver "chose to take a route that deviated from the low altitude route specifically prescribed by" Frito-Lay in the Addendum to the Rate Agreement. (*Id.* p.9; ECF No. 1-1 ¶18.) Thus, according to Ultra Logistics, there is no factual dispute that the bags were damaged in transit while in the custody of Cody Keys.

Ultra Logistics further argues that summary judgment should be granted as to count two—breach of contract against Cody Keys—because Cody Keys' failure to deliver the bags in good condition was a breach of the Rate Agreement. (ECF No. 21-2 pp.10, 11.) Ultra Logistics claims it is thus entitled to

---

statements made by me herein are willfully false I am subject to punishment." (ECF No. 23-1 p.3.)

reimbursement of the contract price of $3,100. (*Id.*) It also seeks attorney's fees under the Carrier Agreement because "Cody Keys' unquestioned liability for th[e] loss has been established." (*Id.* pp. 11, 12.) However, Ultra Logistics fails to discuss whether summary judgment as to count three—violation of the implied covenant of good faith and fair dealing against Northland—is appropriate. As such, the Motion seeks summary judgment as to counts one and two only.

In support of the Motion, Ultra Logistics relies on the October 7, 2020 and January 21, 2021 declarations of Patrick Bachmann, the Operations Manager and Head of Human Resources at Ultra Logistics. (ECF No. 21-3; ECF No. 28 pp. 1–5.) According to Bachmann, Frito-Lay contacted Ultra Logistics in November of 2018 to arrange for the shipment of the bags of chips from Phoenix to Frankfort. (ECF No. 28 ¶ 4.) By the time Ultra Logistics selected Cody Keys as its carrier, the Carrier Agreement and Rate Agreement (along with the Addendum) were in effect. (*Id.* ¶¶ 5, 6, 8, 9.) The Addendum provides that "[a]ny deviation from th[e] prescribed route may result in damage to the contents of this load and result in a cargo claim against your company." (*Id.* p. 17.)

Cody Keys issued a Bill of Lading when it picked up the bags for shipment.[4] (*Id.* ¶ 11.) The Bill of Lading indicates that the shipment consisted of 1,260 cases of "assorted snack foods" on 38 pallets. (*Id.* p. 21.) The Bill of Lading also indicates as follows: "This is to verify that the [subject bags] are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation[.]" (*Id.* pp. 21, 29.) According to Bachmann, "[s]hortly after Cody Keys delivered the subject goods to Frito[-]Lay in Frankfort, … Frito[-]Lay … reported a claim [to Ultra Logistics] in the amount of $37,701.60 … Cody Keys'

---

[4] The bill of lading "operates as both the receipt and the basic transportation contract between the shipper/consigner and the carrier, and its terms and conditions are binding." *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993). The bill of lading is a contract, and thus, subject to general principles of contract law. *Id.*

driver did not take the specified Low Altitude Route" and "the bags had blown … as a result[.]"  (*Id.* ¶ 14.)

Bachmann conducted an investigation to determine how the bags were damaged.  (*Id.* ¶ 15.)  As part of his investigation, he contacted a "Macropoint" vendor to track the carrier route by tracing the driver's cellular phone.  (*Id.*)  He also used a program called "Milemaker" to track the route taken by Cody Keys' driver.  (*Id.*)  When Bachmann compared the log of the actual route taken by the driver with the Addendum, he determined that the driver deviated from the prescribed route.  (*Id.* ¶ 16.)  The driver's detour elevated the bags to "an altitude higher than any location noted … in the Addendum[.]"  (*Id.*)  Bachmann avers that no one from Ultra Logistics had any conversation with Cody Keys' driver or dispatcher about any deviation from the prescribed route.  (*Id.* ¶ 17.)

## II.   CODY KEYS' POSITION

In opposition to the Motion, Cody Keys claims there are several factual disputes.  (ECF No. 23.)  First, Cody Keys notes that the bags of chips were in sealed cartons when they were loaded onto Cody Keys' trailer.  (*Id.* p. 4 ¶ 1.)  As such, the condition of the goods could not be inspected by Cody Keys when Cody Keys took delivery.  Second, Cody Keys' driver followed the prescribed route out of Phoenix into southern New Mexico, but then contacted Ultra Logistics for permission to deviate from the route to avoid heavy traffic in Dallas-Fort Worth, Texas.  (*Id.* p. 4 ¶¶ 2, 3.)  Thus, according to Cody Keys, any deviation was known to and approved by Ultra Logistics.  Third, Cody Keys claims that the elevations of the approved detour never exceeded the highest elevation of the prescribed "low altitude" route.[5]  (*Id.* p. 4 ¶¶ 4, 5.)  Therefore, Cody Keys raises

---

[5] Bachmann testified at his deposition that, in comparing the "prescribed route" under the Carrier Agreement with the "actual route" taken by Cody Keys' driver, Bachmann found that the two routes were "pretty close."  (ECF No. 23-2 p. 10 at 30:18 to 31:25.)

a question of whether the deviation even caused damage to the bags. Fourth, Cody Keys points out that Frito-Lay signed a "clear" Bill of Lading once the bags were delivered at Frankfort. (*Id.* p. 4 ¶ 6.) Cody Keys also argues that Ultra Logistics cannot "use a *prima facie* case [under the Carmack Amendment] to obtain summary judgment." (*Id.* p. 5.) It submits it "has presented evidence that it was not negligent in the carriage of the goods sufficient … to create a question of fact to preclude summary judgment." (*Id.* pp. 5, 6.)

In support of its opposition, Cody Keys relies on the original certification and refiled certification of Brad Linder.[6] (ECF No. 23-1; ECF No. 29-1.) Linder is the Cody Keys truck driver who transported the bags of chips. (ECF No. 29-1 ¶¶ 1, 2.) Linder states he "was unable to inspect any of the individual bags" because "the bags themselves were contained in sealed cardboard cartons[.]" (*Id.* ¶ 3.) He transported the bags to Frankfort "via a specified low altitude route" (*id.* ¶ 4) to a point "near El Paso, Texas." (*Id.* ¶ 5.) He then "contacted [Ultra Logistics] and asked permission to alter the route" to avoid heavy traffic. (*Id.*) Linder states he was granted permission to use the alternate route. (*Id.* ¶ 6.) He claims the load was accepted, and a "clear" Bill of Lading was signed upon arrival at Frankfort. (*Id.* ¶ 8.)

---

[6] I previously entered a text order on January 15, 2021, which directed Ultra Logistics to submit legible, authenticated Exhibits in support of the Motion, and instructed Cody Keys to file declarations with the appropriate jurat required under 28 U.S.C. § 1746. (ECF No. 27.) While Cody Keys filed an attorney declaration authenticating certain exhibits (ECF No. 29-2), Cody Keys failed to file a declaration of Brad Linder with the appropriate jurat. Cody Keys is, once again, directed to file a declaration as to Brad Linder complying with 28 U.S.C. § 1746, within seven days of this Opinion and accompanying Order. If Cody Keys fails to timely submit a compliant declaration, the Opinion and the Order will be revisited.

## **DISCUSSION AND ANALYSIS**

### **I.   LEGAL STANDARD**

Under Rule 56(c), summary judgment is appropriate if the moving party demonstrates there are no genuine issues of material fact, and the materials in the record establish the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also* Fed.R.Civ.P. 56(c)(1)(A) (providing that "materials in the record" include depositions, documents, electronically stored information, affidavits or declarations, admissions, interrogatory answers, or "other" materials).  A factual dispute is "genuine" if a reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.*

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48. The Court "may not make credibility determinations or engage in any weighing of the evidence" in deciding a summary judgment motion. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson* 477 U.S. at 255). "[I]nstead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Id.*

The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp.*, 455 U.S. at 323.  "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable [trier of fact] could find for the non-moving party."

*In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1439 (11th Cir. 1991)).

Once the moving party meets its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). However, the opposing party must present "more than a scintilla of evidence showing that there is a genuine issue[.]" *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citation and quotations omitted). "[S]imply show[ing] that there is some metaphysical doubt as to the material fact" will not defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot rest on mere allegations. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). Rather, summary judgment is properly denied where the opposing party "has created a genuine issue of material fact … [by] provid[ing] sufficient evidence to allow a [trier of fact] to find in its favor at trial." *Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 138 (3d Cir. 2001); *see also* Fed.R.Civ.P. 56(e) (requiring the non-moving party to "set out specific facts showing a genuine issue for trial").

## II. THE CARMACK AMENDMENT

The Carmack Amendment governs liability for loss, damage, or injury to property transported in interstate commerce. *See Se. Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936); *see also* 49 U.S.C. §14706(a)(1). "The Carmack Amendment to the Interstate Commerce Act makes interstate carriers strictly liable to the shipper for damages to the property they transport unless they can prove certain defenses." *Alterra Am. Ins. Co. v. Daily Express, Inc.*, No. 15-03665, 2017 WL 3891960, at *3 (D.N.J. Sept. 5, 2017) (citations omitted). "To establish a *prima facie* case against a carrier under the Carmack Amendment, a shipper must prove '(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount

8

of the damages.'" *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (quoting *Beta Spawn, Inc v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 (3d Cir 2001)). "In other words, … a carrier … is liable for damage to goods transported by it, unless it can show the damage was caused by interference by human forces outside the control of either the shipper or the carrier." *Am. Home Assurance Co. v. RAP Trucking, Inc.*, No. 09-80020, 2010 WL 547479, at *3 (S.D. Fla. Feb. 9, 2010). "In establishing what type of condition the goods arrived in, a claimant must provide reliable evidence, direct or circumstantial, that proves the condition of the goods by a preponderance of the evidence." *Penske Logistics, Inc. v. KLLM, Inc.*, 285 F.Supp.2d 468, 474 (D.N.J. 2003) (citing *Beta Spawn*, 250 F.3d at 225).

"Once the plaintiff establishes a *prima facie* case under the Carmack Amendment, the 'burden shifts to the carrier to prove that it was free from negligence and that the damage was caused solely by' one of several possibilities, including 'an act of the shipper himself.'" *Alterra*, 2017 WL 3891960, at *5 (quoting *Beta Spawn*, 250 F.3d at 226). There are five "excepted clauses" which operate to relieve a carrier from liability in the absence of its own negligence: (1) act of God; (2) act of public enemy; (3) act of shipper itself; (4) act of public authority; and (5) inherent vice or nature of the goods. *Mo. Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964). As to the act-of-shipper exception, "[w]here the shipper, rather than the carrier, secures the load, a carrier can still be liable for any resulting damage if the shipper's negligent work was 'obvious or apparent' to the carrier." *Alterra*, 2017 WL 3891960, at *6 (quoting *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1953)). "The recognized exceptions to carrier Carmack Amendment liability do not include third party negligence; intervening criminal conduct; assumption of the risk or break in the chain of proximate cause." *RAP Trucking*, 2010 WL 547479, at *5 (citing *Malone v. Mayflower Transit, Inc.*, 819 F.Supp. 724 (E.D. Tenn. 1993)). "Thus,

9

negligence causation and defense doctrines have no play in Carmack Amendment analysis." *Id.*

### A. Count One: Liability Under the Carmack Amendment

I find that Ultra Logistics has not established a *prima facie* case under the Carmack Amendment since at least several genuine issues of material fact persist. Thus, Ultra Logistics is not entitled to summary judgment as to count one. To establish a *prima facie* case under the Carmack Amendment, Ultra Logistics must prove (1) delivery of the goods to Cody Keys in good condition, (2) damage of the goods before delivery at Frankfort, and (3) the amount of the damages. *Paper Magic*, 318 F.3d at 461.

#### i. Delivery of the Bags to Cody Keys in "Good Condition"

There is a factual dispute over whether the goods were delivered to Cody Keys in "good condition" when Cody Keys took custody of the bags in Phoenix. The Carrier Agreement provides that "[e]ach incident of transportation … shall be evidenced by a written Bill of Lading showing the kind and quality of Commodity received and delivered by Carrier at the loading and unloading points, respectively." (ECF No. 28 p.11 ¶ 14.) "Such receipt shall be *prima facie* evidence of receipt of such property in good order and condition, unless such Commodity is not readily observable[.]" (*Id.*) The Bill of Lading indicates that the shipper—identified as non-party "Shearers Phoenix"—loaded the trailer.[7] (*Id.* p.21.) The Bill of Lading contains the shipper's certification that the bags of chips were "properly detailed, described, packaged, marked and labeled, and … in proper condition[.]" (*Id.*) However, Cody Keys' truck driver, Linder, states he "was unable to inspect any of the individual bags" because "the bags

---

[7] According to Frito-Lay's assignment, however, the trailer transported by Cody Keys was "loaded by" Frito-Lay. (ECF No. 21-3 p.27.) As such, it remains unclear whether Shearers Phoenix or Frito-Lay is the "shipper" for the subject bags of chips. The relationship, if any, between Shearers Phoenix and Frito-Lay has not been addressed by the parties in briefing.

10

themselves were contained in sealed cardboard cartons[.]" (ECF No. 29 ¶ 3.) Thus, the condition of the bags at the time Cody Keys took custody of the shipment is disputed.

Importantly, "[t]he jurisprudence on Carmack Amendment claims … imposes different evidentiary thresholds for demonstrating good condition depending on whether the freight was in a sealed container or an unsealed container when tendered to the initial carrier." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Schneider Nat'l Carriers, Inc.*, No. 15-01401, 2018 WL 6573471, at *5 (D.N.J. Sept. 25, 2018). "When freight is in an unsealed container, a bill of lading that recites the shipment's contents and states that they were received by the carrier in good condition will satisfy the first element of a Carmack Amendment action." *Id.* (citing *Beta Spawn*, 250 F.3d at 225). Courts have "reasoned that heightened proof is not required when the shipment … is in an unsealed container because the carrier has the ability to ascertain the nature and condition of the shipment before taking delivery." *Id.* (citing *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003) (holding that where shipment is in a sealed container, a bill of lading without more is insufficient to establish a *prima facie* Carmack Amendment case)).

By contrast, when the cargo is in a sealed container—as in this case—the goods are "neither visible nor open to inspection," and "a bill of lading, by itself, is not sufficient to establish the condition of the goods." *Beta Spawn*, 250 F.3d at 225. As such, where a shipment is delivered to the carrier in a sealed container, plaintiff "cannot rely solely on the bill of lading to establish the condition" of the goods, but instead must present "other reliable evidence … which is 'sufficient to establish by a preponderance of all the evidence the condition of the goods upon delivery.'" *Beta Spawn*, 250 F.3d at 225 (quoting *Pillsbury Co. v. Ill. Cent. Gulf R.R.*, 687 F.2d 241, 244 (8th Cir. 1982)).

Here, Ultra Logistics relies exclusively on the face of the Bill of Lading in seeking to make a *prima facie* case under the Carmack Amendment. According to Ultra Logistics' Statement of Material Facts, when Cody Keys picked up the bags, a Bill of Lading indicating the goods were "properly classified, described, packaged, marked and labeled, and are in proper condition for transportation" was generated. (ECF No. 21-1 p. 3 ¶¶ 8, 9.) "Thus," according to Ultra Logistics, "the [bags] were in good condition at the time when Cody Keys picked them up … in Phoenix[.]"

However, the shipment was sealed when tendered to Cody Keys. As such, the Bill of Lading, alone, "is not sufficient to establish the condition of the goods." *Beta Spawn*, 250 F.3d at 225. Without other "reliable evidence," I cannot conclude that Ultra Logistics has established a *prima facie* case under the Carmack Amendment. *Paper Magic*, 318 F.3d at 461. On this basis, the Motion will be denied.

       ii. <u>Damage to the Bags before Final Destination</u>

There is also a factual dispute over whether the bags of chips were damaged while in transit from Phoenix to Frankfort. To establish a *prima facie* case under the Carmack Amendment, Ultra Logistics must also prove damage to the goods before delivery to their final destination. *Paper Magic*, 318 F.3d at 461. According to Ultra Logistics' Statement of Material Facts, "[s]hortly after Cody Keys delivered the subject goods to … Frankfort, … Frito[-]Lay contacted Ultra [Logistics] and reported a claim[.]" (ECF No. 21-1 p. 4 ¶ 11.) "In reporting this claim, Frito[-]Lay … indicated that Cody Keys' driver did not take the specified Low Altitude Route and … the bags had blown seals as a result[.]" (*Id.*)

There is a genuine factual dispute with regard to the second element of Ultra Logistics' Carmack Amendment claim. Even if Cody Keys' driver had deviated from the prescribed route without permission, the parties dispute whether the bags were damaged while in transit from Phoenix to Frankfort. First, Linder states he could not inspect the bags because they were contained in sealed

12

cartons. (ECF No. 23-1 ¶ 3.) Second, Linder states that the bags were "accepted" by Frito-Lay at Frankfort. (*Id.* ¶ 8.) Linder's statements "[are] to be believed" and all justifiable inferences should be drawn in Cody Keys' favor. *Anderson*, 477 U.S. at 255. A trier of fact could conclude that Frito-Lay's acceptance of the delivery indicated that the bags were in good condition as delivered.

Third, Frito-Lay did not discover "visual damage" to the bags until December 6, 2018—almost one month after Cody Keys delivered the bags. (ECF No. 28 p. 23.) According to Ultra Logistics, "[i]n reporting th[e] claim, Frito[-]Lay … indicated that Cody Keys' driver did not take the specified Low Altitude Route and … the bags had blown seals as a result[.]" (ECF No. 21-1 p. 4 ¶ 11.) But the "Packaging Condition Check" section of Frito-Lay's Claim Form indicates that the original shrink wrap was no longer intact. (ECF No. 28 p. 23.) The Claim Form also indicates that the product was not taped, or, not "under shrink wrap" (or both). (*Id.*) Contrary to Ultra Logistics' contention, the documentary evidence appears to indicate that Frito-Lay did not discover blown bag seals. Rather, Frito-Lay appears to have discovered compromised shrink wrap and shoddy taping efforts almost one month after Cody Keys' delivery was accepted at Frankfort. Thus, a trier of fact could conclude that the damage happened either before, or after, Cody Keys' transportation of the goods between November 8 and November 11, 2018. As such, Ultra Logistics has not satisfied the second element of its Carmack Amendment claim at this juncture. Accordingly, summary judgment in favor of Ultra Logistics as to count one of the complaint will be denied.

### B. Count Two: Breach of Contract

Ultra Logistics also claims that, because Cody Keys "did not fulfill its obligations under the [*sic*] Rate Agreement[,] as it delivered the subject goods in a damaged condition … [Cody Keys committed] a breach of contract[.]" (ECF No. 21-2 p. 10.) "A party alleging a breach of contract satisfies its pleading

requirement if it alleges (1) a contract; (2) a breach of that contract; and (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F.Supp.2d 552, 561 (D.N.J. 2002) (citations omitted).

However, neither party has addressed the issue of whether Ultra Logistics' Carmack Amendment claim (count one) preempts its breach of contract claim (count two). The Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination[.]" *Se. Express*, 299 U.S. at 29. The Carmack Amendment "preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments." *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996). Courts of Appeals across federal circuits "have dismissed state and common law claims for breach of contract, negligence, conversion and every other action for loss of or injury to a shipment of goods." *Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*, 762 F.3d 332, 336 n.3 (3d Cir. 2014) (collecting cases). The Carmack Amendment's preemptive force has been described as "exceedingly broad—broad enough to embrace 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *Id.* at 335 (citing *Ga., Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)). The Third Circuit has held that state law breach of contract and negligence claims against a carrier for loss of or damage to goods are preempted. *See Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 407–08 (3d Cir. 2008).

Notably, the Carrier Agreement between Ultra Logistics and Cody Keys specifically provides that Cody Keys' "liability for any cargo damage, loss or theft from any cause shall be determined under the Carmack Amendment 49 U.S.C. § 14706[.]" (ECF No. 21-1 p.5 ¶ 16; ECF No. 28 p.11 ¶ 15.) As such, this dispute is governed by the Carmack Amendment, which effectively preempts Ultra

14

Logistics' breach of contract claim (count two). *See Schneider*, 2018 WL 6573471, at *4 ("…the parties agree that, although the Complaint asserts a claim for breach of contract, the claim actually arises under the … Carmack Amendment").[8]

The issue of preemption has not been raised or briefed by the parties. But based on the terms of the Carrier Agreement, and in light of the preemption doctrine, I am satisfied that Ultra Logistics is not entitled to summary judgment in its favor as to count two. *See Lloyd's of London*, 762 F.3d at 336 (common law claims deemed preempted since property was lost "while it was in transit"). Accordingly, summary judgment as to count two will be denied.

As an aside, there is a disputed issue of fact as to whether Cody Keys obtained Ultra Logistics' approval to deviate from the prescribed route so that Cody Keys' driver could avoid traffic in Texas. Ultra Logistics claims permission to deviate was never given, while Cody Keys maintains it was. (ECF No. 21-2 p.9; ECF No. 23 p.4 ¶3.) In essence, Ultra Logistics argues that, since Cody Keys deviated from the prescribed route, the bags could only have been damaged while in Cody Keys' custody, thus rendering Cody Keys liable under the Carmack Amendment and establishing Ultra Logistics' *prima facie* case. Cody Keys asserts that permission to deviate from the prescribed route effectively relieves it of any and all Carmack Amendment liability.

Each party misses the mark. Ultra Logistics ignores the motion record, which indicates that the bags could not be inspected when Cody Keys took custody, and, that Frito-Lay discovered evidence of cargo tampering one month after the delivery was accepted. Even if Cody Keys' deviation was never authorized, a trier of fact could nevertheless conclude that the bags were

---

[8] I encourage the parties to meet and confer to enter into an appropriate stipulation dismissing count two of the complaint.

damaged before Cody Keys took custody in Phoenix, or after delivery was completed at Frankfort.

Cody Keys appears to misapprehend the elements of a Carmack Amendment claim. *Paper Magic*, 318 F.3d at 461. Cody Keys was never immunized from Carmack Amendment liability merely because Ultra Logistics purportedly approved Cody Keys' deviation from the prescribed route. Furthermore, Cody Keys does not dispute that its potential liability for delivering the bags in damaged condition "shall be determined under the Carmack Amendment 49 U.S.C. § 14706[.]" (ECF No. 21-1 p. 5 ¶ 16; ECF No. 28 p. 11 ¶ 15.) However, since questions as to when and how damage to the bags, packaging, shrink wrap, and taping occurred still persist, summary judgment at this juncture is not appropriate. Ultra Logistics has not made a *prima facie* case as to count one, which also preempts count two. The Motion will be denied.[9]

### C. Count Three: Implied Covenant of Good Faith and Fair Dealing

Ultra Logistics does not style its Motion as one for summary judgment as to only counts one and two of the complaint, yet advances no position regarding whether summary judgment as to count three is appropriate. Since Ultra Logistics has not sought summary judgment as to its claim against Northland, I will not consider the issue.

---

[9] Ultra Logistics' request for attorney's fees under the Carrier Agreement for Cody Keys' "unquestioned liability" is likewise denied. (ECF No. 21-2 pp. 11, 12.)

## CONCLUSION

For the reasons stated, the Motion is **DENIED**. A separate Order accompanies this Opinion.

                                                 */s/ Edward S. Kiel*
                                                 **EDWARD S. KIEL**
                                                 **UNITED STATES MAGISTRATE JUDGE**

Date: February 17, 2021